```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
DWAYNE SINGLETON,                                           :
                                                            :
                              Plaintiff,                    :     12 Civ. 02021 (LGS)
                                                            :
              -against-                                     :     OPINION AND ORDER
                                                            :
CORRECTION OFFICER WILLIAMS,                                :
                                                            :
                              Defendant.                    :
------------------------------------------------------------X
```

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 05/20/2014
```

LORNA G. SCHOFIELD, District Judge:

Dwayne Singleton, pro se, brings this action pursuant to 42 U.S.C. § 1983 against Defendant Correction Officer Kimberly Williams, alleging interference with his mail during his incarceration at the George R. Vierno Center ("GRVC") on Rikers Island, in violation of the First and Fourteenth Amendments. Defendant moves for summary judgment dismissing the Complaint in its entirety ("Motion"). Because Plaintiff has failed to adduce sufficient evidence to permit a reasonable juror to return a verdict in his favor, Defendant's Motion is granted.

## BACKGROUND

### I. Factual Background

The following facts are taken from Plaintiff's deposition, Plaintiff's Complaint, Defendant's Statement pursuant to Local Rule 56.1 ("56.1 Statement") and Defendant's other filings in support of her Motion.

This case involves Plaintiff's allegations that his mail was stolen or withheld while he was incarcerated at GRVC, from December 2009 to May 2010, and from September 2011 to March 2012. While at GRVC, Plaintiff drafted letters "everyday," usually "ten, fifteen letters in one shot." Plaintiff corresponded with his mother, his cousins, an ex-girlfriend, his lawyers, a

friend named "Stacy," whose last name and contact information is unknown to Plaintiff, and several other women whose names he does not recall. Plaintiff also sent letters to outpatient programs, drug programs, magazines, and "businesses," including a record company and a film company.

Plaintiff received "a lot of mail" while incarcerated at GRVC, including from his mother, the ex-girlfriend, a social worker and other individuals. Plaintiff also received money from his mother and his cousins on numerous occasions. In addition to personal mail, Plaintiff received legal mail, which was recorded in a log. Plaintiff signed for legal mail on twelve occasions between December 2011 and March 2012.

Plaintiff suspected he was not receiving all of his mail because he "wrote to certain people and he didn't get [any] response back [from] . . . a few girls . . . [and] businesses." In addition, Plaintiff's friend "Stacy" told him that she had not received any of the four or five letters Plaintiff had sent her, and that she had sent him letters, which Plaintiff did not receive. Plaintiff testified that no one except Stacy told him they had sent mail that he had not received.

While Plaintiff was an inmate at GRVC, Defendant was the primary mail officer on duty from Monday to Friday, and frequently distributed Plaintiff's mail, usually after lunch. When Defendant was unavailable, other correction officers filled in and distributed mail to the inmates.

Plaintiff and Defendant offer conflicting evidence concerning Defendant's alleged interference with Plaintiff's mail. Plaintiff asserts that he first suspected that Defendant was stealing his mail because she spoke to him disrespectfully. Plaintiff testified that "[t]hings started to get out of hand when [Plaintiff] suspected that [Defendant] was . . . messing with [his] mail." Plaintiff observed that Defendant was friendly with some inmates and delivered their mail, but heard that she was "playing with" the mail of inmates she did not like.

According to Plaintiff, when he confronted her, she "would look at [him] with the mail in her hand, and keep walking." On March 5, 2012, Defendant made two statements to Plaintiff, both of which he interpreted as admissions that she was withholding his mail. Defendant made the statements when Plaintiff was questioning or accusing Defendant about his mail, apparently not for the first time, and she responded, "[y]ou keep asking me stupid questions, you aint' getting your f*ckin' mail." Defendant also said "you crazy, take ya' medication, cause you got that right, you won't be getting no f*ckin' mail from me." According to Plaintiff, he could not "prove" that Defendant was interfering with his mail until she made these statements. Plaintiff stated that during this exchange he was being "volatile" and "probably having bipolar disorder." After that incident, Plaintiff did not recall receiving mail from Defendant again, although he did receive mail from other correction officers. Plaintiff was transferred out of GRVC approximately one week after the confrontation with Defendant.

According to Defendant, near the end of Plaintiff's incarceration at GRVC, he accused her of stealing his mail, spit on the glass separating them, and threatened to kill her, at which point Defendant gave Plaintiff's mail to a different correction officer for delivery. Defendant states that after this incident, Plaintiff would "yell and threaten [her]" and on multiple occasions, threatened to kill her and her family. Defendant denies withholding, tampering, or otherwise interfering with Plaintiff's mail.

## II.   Procedural History

On December 19, 2013, Defendant filed her Motion, 56.1 Statement, and supporting papers, including excerpts from Plaintiff's deposition. On January 22, 2014, Plaintiff filed his opposition to the Motion ("Opposition"). Plaintiff's Opposition consisted of six declaratory sentences reiterating the assertions in his Complaint. Plaintiff filed no supporting affidavits or other evidence, and no opposition to Defendant's 56.1 Statement. On January 29, 2014,

3

Defendant filed her reply to Plaintiff's Opposition. On March 17, 2014, Plaintiff filed a "response" to Defendant's reply, asserting that he "did overhear [Defendant] tell [him] with her own words that she was stealing [his] mail," and that "there are no witnesses because it was just [Defendant] in front of [Plaintiff's] cell."

## **STANDARD**

The standard for summary judgment is well established. Summary judgment is appropriate where the record before the court establishes that there is no "genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of informing the court of the basis for the summary judgment motion and identifying those portions of the record that demonstrate the absence of a genuine dispute as to any material fact. Fed. R. Civ. P. 56(c); *see, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Koch v. Town of Brattleboro*, 287 F.3d 162, 165 (2d Cir. 2002). The court must construe the evidence in the light most favorable to the non-moving party and must draw all reasonable inferences in the non-moving party's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d 76, 87 (2d Cir. 2008).

If the non-moving party has the burden of proof on a specific issue, the moving party may satisfy its own initial burden by demonstrating the absence of evidence in support of an essential element of the non-moving party's claim. *See, e.g.*, *Celotex,* 477 U.S. at 322-23; *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002). In other words, summary judgment is warranted if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

"Although pro se plaintiffs are entitled to special latitude, when defending against summary judgment motions, absent a showing of concrete evidence from which a reasonable juror could return a verdict in [the non-moving party's] favor, summary judgment must be granted to the moving party." *Jermosen v. Coughlin*, 877 F. Supp. 864, 867 (S.D.N.Y. 1999) (alteration in original) (citations omitted) (internal quotation marks omitted). "Evidence which is merely colorable, conclusory, speculative or not significantly probative is insufficient to withstand a summary judgment motion." *Id.* (internal quotation marks omitted).

Where the non-moving party fails to respond to a Rule 56.1 statement submitted by the moving party, the facts in the moving party's Rule 56.1 statement may be deemed admitted as a matter of law. S.D.N.Y. R. 56.1-56.2. In the Second Circuit, however, "[c]ourts . . . typically forgive a pro se plaintiff's failure to file a Local Rule 56.1 Statement, and generally conduct their own independent review of the record." *Lloyd v. Holder*, No. 11 Civ. 3154, 2013 WL 6667531, at *5 (S.D.N.Y. Dec. 17, 2013).

## DISCUSSION

The Complaint alleges a violation of "federal laws," including the First Amendment to the Constitution and "Section 1309 of the U.S. Postal Code"[1] on account of Defendant "stealing" "personal mail . . . business mail and more," and asserts that jurisdiction is proper under 42 U.S.C. § 1983. Construing the Complaint broadly, Plaintiff has stated claims pursuant to 42 U.S.C. § 1983 for deprivation of Plaintiff's First Amendment rights on account of interference with non-legal mail, and deprivation of Plaintiff's First and Fourteenth Amendment rights on account of interference with legal mail. Because Plaintiff has failed to adduce evidence

---

[1] Because no such legal provision exists, this claim will not be addressed.

5

sufficient for a reasonable juror to find that the alleged interference with his mail amounted to a constitutional violation, summary judgment is granted on all claims.

## I. Non-Legal Mail

An inmate has a First Amendment right to "the free flow of incoming and outgoing mail." *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003); *Heimerle v. Attorney General*, 753 F.2d 10, 13 (2d Cir. 1985). Restricting prisoners' right to mail is permissible only where it "further[s] one or more of the substantial governmental interests of security, order, and rehabilitation . . . [and is] no greater than is necessary or essential to the protection of the particular governmental interest involved." *Ahlers v. Rabinowitz*, 684 F.3d 53, 64 (2d Cir. 2012) (quoting *Davis*, 320 F.3d at 351). To establish a claim for interference with regular, non-legal mail in violation of the First Amendment, an inmate "must show a pattern and practice of interference that is not justified by any legitimate penological concern." *Cancel v. Goord*, No. 00 Civ. 2042, 2001 WL 303713, at *6 (S.D.N.Y. Mar. 29, 2001) (dismissing First Amendment claim where inmate identified only a "single instance" of interference with his regular mail). The Second Circuit has directed that "an isolated incident of mail tampering is usually insufficient to establish a constitutional violation." *Davis*, 320 F.3d at 351.

Here, the evidence in the record is insufficient for a reasonable juror to find that Plaintiff has established interference with his incoming non-legal mail rising to the level of a First Amendment violation. Even construing the evidence in Plaintiff's favor, Plaintiff has alleged only one specific incident involving interference with his mail—that he attempted to exchange mail with his friend Stacy, whose last name and contact information he does not know, and that neither Plaintiff nor Stacy received each other's mail. Plaintiff's assertion that Defendant interfered with his mail is otherwise based upon three facts: (1) that he wrote numerous letters to individuals, businesses and organizations, and did not receive responses to all of his letters; (2)

6

that approximately one week before Defendant was transferred from GRVC, Defendant responded to Plaintiff's allegations that she was stealing his mail by stating "you crazy, take ya' medication, cause you got that right, you won't be getting no f*ckin' mail from me" and "[y]ou keep asking me stupid questions, you' aint' getting your f*ckin' mail"; and (3) that he heard from "some other guys" that Defendant was "playing with the mail" of the inmates she did not like.  These allegations are insufficient to "establish a pattern and practice of interference [with Plaintiff's mail]," particularly where Plaintiff also testified that he otherwise received mail from "a lot of people" and that no other individuals told him that they had sent mail that he had not in fact received.  Accordingly, Defendant's Motion as to Plaintiff's First Amendment claim for interference with non-legal mail is granted.

**II.    Legal Mail**

Interference with legal mail may constitute a violation of the right to free speech under the First Amendment and the right of access to the courts under the First and Fourteenth Amendments.  *Davis*, 320 F.3d at 351; *Monsky v. Moraghan*, 127 F.3d 243, 246-47 (2d Cir. 1997) (citing *Lewis v. Casey*, 518 U.S. 343 (1996)).  As with interference with non-legal mail, interference with legal mail is permissible only where it "further[s] one or more of the substantial governmental interests of security, order, and rehabilitation . . . [and is] no greater than is necessary or essential to the protection of the particular governmental interest involved."  *Ahlers*, 684 F.3d at 64 (internal quotation marks omitted).  Legal mail, however, is "afforded greater protection . . . than . . . non-legal mail."  *Davis*, 320 F.3d at 351; *accord Cancel*, 2001 WL 303713, at *6.  To establish a violation of the right to free speech, an inmate must still demonstrate that prison officials "regularly and unjustifiably interfered with the . . . legal mail."  *Cancel*, 2001 WL 303713, at *6 (citing *Washington v. James*, 782 F.2d 1134, 1139 (2d Cir. 1986)).  To establish a claim of denial of access to the courts, a plaintiff must show: (1) that the

defendant acted deliberately and maliciously; and (2) that the plaintiff suffered actual injury in pursuing a legal claim.  *Davis*, 320 F.3d at 351 (internal quotation marks omitted).

The record does not contain sufficient evidence to permit a reasonable juror to find that Plaintiff has established that Defendant's conduct in respect of Plaintiff's legal mail amounted to a constitutional violation.  First, Plaintiff has neither alleged nor produced evidence that his receipt or delivery of legal mail was impeded.  Plaintiff testified that he "sent a lot of different pieces of mail" to his lawyers, that "legal mail is always recorded when you receive it," and that he "received mail from the lawyer."[2]  The record indicates at least twelve occasions on which Plaintiff signed for legal mail for the period from December 2011 through March 2012.  Second, there is no evidence that Plaintiff suffered any injury in pursuing his legal claims as a result of any interference with his legal mail.  For example, when asked during his deposition whether his criminal case was affected in any way by the incident involving "[the] messing with [his] mail," Plaintiff responded "[o]nly in a mental way."  Defendant's Motion for summary judgment on Plaintiff's claims in respect of his legal mail is accordingly granted.

**CONCLUSION**

For the reasons discussed above, Defendant's Motion for summary judgment dismissing all of Plaintiff's claims is hereby GRANTED.

The Clerk of Court is directed to close the motion at docket number 38, to close this case, and to mail a copy of this Opinion and Order to the pro se Plaintiff.

Dated: May 20, 2014
     New York, New York

                              _____
                              LORNA G. SCHOFIELD
                              UNITED STATES DISTRICT JUDGE

---

[2] Similarly, because Plaintiff has not alleged any interference with his access to counsel, nor did any of the evidence indicate as much, a Sixth Amendment claim would also fail on these facts.

8